**United States District Court**
**District of Massachusetts**

```
_____
                               )
FIRST CHOICE ARMOR & EQUIPMENT, )
INC.,                          )
          Plaintiff,           )
                               )    Civil Action No.
          v.                   )    09-11380-NMG
                               )
TOYOBO AMERICA, INC. and TOYOBO )
CO., LTD.,                     )
          Defendants.          )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises from allegations of fraud related to the sale of fiber used in the manufacture of ballistic-resistant vests. Before the Court are 1) Defendants' motions to dismiss, 2) Plaintiff's motion to amend the complaint and 3) Defendants' motion to strike.

## I.  <u>Factual Background</u>

Plaintiff First Choice Armor & Equipment ("First Choice") has brought suit against Toyobo Co., Ltd. ("Toyobo Co."), a Japanese corporation, and its North American subsidiary, Toyobo America, Inc. ("Toyobo America"), a New York corporation, for fraud, fraudulent inducement and deceptive trade practices in connection with the manufacture, marketing, distribution and sale of Zylon, a fiber used to make bullet-proof vests. First Choice alleges that Toyobo Co. & Toyobo America (collectively, "Toyobo")

-1-

engaged in a pattern and practice of intentional misrepresentations regarding the quality, condition, safety and suitability of Zylon and the vests that contain it.

The plaintiff's 46-page complaint alleges that Zylon was defective because it substantially degraded as a result of the weaving process, light exposure, over-neutralization, heat and moisture.  Although Toyobo allegedly knew about those defects, it continued to manufacture, sell and promote Zylon for use in bullet-proof vests until August, 2005, when Zylon was banned by the National Institute of Justice ("NIJ").  First choice alleges that Toyobo made numerous false statements in order to downplay the problems with Zylon and to induce First Choice and other vest manufacturers to continue using it.  Those alleged misrepresentations and omissions include, <u>inter alia</u>, failing to disclose poor test results and other significant problems, deleting data points from a degradation study and boasting that Zylon was "the safest, lightest and best bullet resistant fiber available in the world" despite known information to the contrary.

First Choice claims that, as of result of Toyobo's allegedly fraudulent conduct, it was forced to recall and replace thousands of bullet-proof vests containing Zylon and, in doing so, incurred millions of dollars in damages.  First Choice estimates that its replacement costs exceeded $7,000,000.  First Choice also asserts

that, as a result of Toyobo's fraud, it has been subjected to investigation and suit by the Department of Justice and has incurred significant fees defending those allegations.  Finally, First Choice contends that it has lost significant profits and suffered damage to its business reputation.

## II.  **Procedural History**

First Choice filed its complaint against Toyobo America and Toyobo Co. on August 18, 2009, alleging: 1) fraud (Count I), 2) fraudulent inducement (Count II) and 3) unfair and deceptive trade practices in violation of the Massachusetts Consumer Protection Act (M.G.L. c. 93A) (Count III).

The defendants have moved to dismiss all of the claims against them and, given that the vast majority of the defendants' arguments are identical, the Court will analyze their motions together.

After the defendants filed their motions to dismiss, First Choice moved for leave to file an amended complaint.  The defendants oppose that motion and move to strike the amended complaint (which was filed before the plaintiff requested leave).

On May 7, 2010, the parties appeared before the Court for a scheduling conference and motion hearing.  At that hearing, the Court announced its tentative rulings with respect to the pending motions and invited oral argument on several issues.  Having taken the motions under advisement and given them further

consideration, the Court now publishes its decision.

### III. <u>Analysis</u>

#### A.  Defendants' Motions to Dismiss (Docket Nos. 8 & 22)

##### 1.  Legal Standard

To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face." <u>Bell Atlantic Corp.</u> v.
<u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may look only to the facts alleged
in the pleadings, documents attached as exhibits or incorporated
by reference in the complaint and matters of which judicial
notice can be taken. <u>Nollet</u> v. <u>Justices of the Trial Court of
Mass.</u>, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) <u>aff'd</u>, 248 F.3d
1127 (1st Cir. 2000).  Furthermore, the Court must accept all
factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  <u>Langadinos</u> v.
<u>American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  If the
facts in the complaint are sufficient to state a cause of action,
a motion to dismiss the complaint must be denied.  <u>See</u> <u>Nollet</u>, 83
F. Supp. 2d at 208.

Although a court must accept as true all of the factual
allegations contained in a complaint, that doctrine is not,
however, applicable to legal conclusions.  <u>Ashcroft</u> v. <u>Iqbal</u>,
129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal

elements, supported by mere conclusory statements, do not suffice to state a cause of action.  Id.  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct.  Id. at 1950.

### 2.  Application

Toyobo has moved to dismiss all of the claims against it on the grounds that 1) they are barred by the applicable statute of limitations and the economic loss doctrine, 2) they have not been pled with the requisite particularity required by Fed. R. Civ. P. 9(b) and 3) Toyobo did not have a duty to disclose any information to First Choice.  The Court considers each of those arguments seriatim.

### a.  Fraud and Fraudulent Inducement Claims (Counts I and II)

### i.  Statute of Limitations

Toyobo contends that the plaintiff's claims for fraud and fraudulent inducement are time-barred and must be dismissed.  In Massachusetts, the statute of limitations for fraud claims is three years from the date the action accrues.  M.G.L. c. 260 § 2A.  Although "one does not have to fully comprehend the full extent or nature of an injury in order for a cause of action to accrue," Koe v. Mercer, 876 N.E.2d 831, 837 (Mass. 2007), a plaintiff pleading fraud must state its claim with enough particularity to meet the heightened pleading requirements of

Fed. R. Civ. P. 9(b).

Toyobo asserts that the latest possible date on which the plaintiff's cause of action could have accrued was August 24, 2005, when the National Institute of Justice ("NIJ"), after conducting a multi-million dollar investigation, released substantial scientific data demonstrating the failures of Zylon and banned its use in bullet-resistant vests in the United States.  Given that the plaintiff did not file the instant action until August 18, 2009, almost four years after the NIJ's announcement, Toyobo asserts that the fraud claims are time-barred.

Although an action generally accrues at the time of the plaintiff's injury, there are two well-established exceptions to that rule for cases involving 1) "inherently unknowable" wrongs and 2) fraudulent concealment.  Under the first exception, often known as the "discovery rule," a cause of action for an "inherently unknowable" wrong does not accrue until

> the injured party knew, or, in the exercise of
> reasonable diligence, should have known, the factual
> basis for the cause of action.

Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991).  A wrong is "inherently unknowable" if it is "incapable of detection through the exercise of reasonable diligence."  Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 376 (1st Cir. 1991).  Ascertaining reasonable diligence is generally a "fact-dominated enterprise"

and, in most circumstances, a determination of "when a plaintiff knew or should have known of its cause of action is one that ... will be decided by the trier of fact." Id.; Taygeta Corp. v. Varian Assocs., 763 N.E.2d 1053, 1063 (Mass. 2002).

The second exception equitably tolls the statute of limitations until the plaintiff's discovery of the cause of action where the defendants have fraudulently concealed the basis of the claim.  See M.G.L. c. 260 § 12 (excluding "period prior to discovery" of cause of action where defendant "fraudulently conceals the cause of such action").  The statute requires the plaintiff to show that the defendants took an affirmative step to hide the cause of action.  Tagliente, 949 F.2d at 6 ("[M]ere silence is not a fraudulent concealment ... there must be something in the nature of positive acts with intent to deceive.")

First Choice finds support for its equitable tolling argument in both of those doctrines.  It claims that the NIJ's announcement on August 24, 2005, did not reveal that First Choice had been defrauded but merely that Zylon degraded more rapidly than the NIJ had anticipated and was not suitable for use in bullet-resistant vests.  First Choice insists that the factual basis for its claims of fraud and fraudulent inducement was inherently unknowable until at least January, 2008, when, after the government's extensive investigation and several years

-7-

of litigation and motions to compel in other cases against
Toyobo, many of the documents that defendants had actively
concealed were finally produced, translated into English and
filed on PACER.  First Choice asserts that, before the release
of those internal, "top secret" documents, it had no means by
which to detect its causes of action for fraud, let alone set
forth its claims with particularity.

First Choice avers that even after the NIJ's ban in 2005,
Toyobo continued to represent, despite internal documents
acknowledging the contrary, that there was nothing wrong with
Zylon and that it was safe for use in ballistic applications.
For example, on the day after the announcement, Toyobo issued a
press release in which it stated that, despite the NIJ's
findings, it still believed Zylon was "a superior lightweight
fiber for body armor applications when properly used."  The
press release also asserted (falsely according to plaintiff)
that Toyobo had

> always shared its testing data so that manufacturers
> c[ould] use that information to properly design,
> engineer and manufacture safe products.

First Choice insists that those and other affirmative
misrepresentations made by the defendants prevented it from
discovering that it had been defrauded.

Toyobo points out, however, that other customers and
government entities were able to file similar claims against

Toyobo as early as 2003.  That fact, Toyobo contends, belies Plaintiff's contention that its cause of action was "inherently unknowable" until 2008.

As Toyobo suggests, allegations of fraudulent concealment do not modify the requirement that plaintiffs must exercise reasonable diligence in attempting to uncover the bases of their claims.  Salois v. Dime Sav. Bank, 128 F.3d 20, 26 (1st Cir. 1997) ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence...").  Thus, First Choice must show not only that Toyobo concealed crucial facts but also that First Choice "lacked the means to uncover" those facts. Maggio, 824 F.2d at 131.

The Court finds that, at a bare minimum, a question of fact exists as to whether First Choice, through the exercise of reasonable diligence, should have detected its fraud claims earlier than August 18, 2006 (three years before the filing of its complaint).  Although other litigants filed claims against Toyobo as early as 2003, many of those cases involved allegations of a different nature (e.g., breach of warranty, breach of fiduciary duty, breach of contract, etc.) and were concentrated on Toyobo's relationship with Second Chance Body Armor, Inc. (another manufacturer of bullet-resistant vests whose products were the subject of the NIJ's investigations).

Thus, even assuming First Choice was on notice of those complaints, there is at least a colorable argument that they would not have provided an adequate, factual basis for its claims of fraud.  In light of the factual uncertainty concerning the tolling of the statute of limitations, resolution of that issue is inappropriate at this stage of the proceedings.

### ii.  Compliance with Fed. R. Civ. P. 9(b)

Toyobo next claims that First Choice has failed it plead its fraud-based claims with the requisite particularity required by Fed. R. Civ. P. 9(b).  That rule mandates that in all averments of fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the requirement, the complaint must, at a minimum, specify the "time, place, and content of the alleged false or fraudulent representations." Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18-19 (1st Cir. 2002).  When a case involves more than one defendant, Rule 9(b) requires the complaint to identify each defendant's role in the alleged fraud.  See Rhone v. Energy North, Inc., 790 F. Supp. 353, 361 (D. Mass. 2001).

The complaint in this case, which is 46 pages long and contains over 100 paragraphs of factual allegations, is more than sufficient to meet the heightened pleading standards of Rule 9(b).  First Choice alleges at least 25 examples of intentional misrepresentations or fraudulent omissions made by

Toyobo, including, to list a few:

1) falsely representing that Zylon was a "superior fiber for personal body armor" and "the safest, lightest and best bullet-resistant fiber available in the world" when, in fact, it was defective, unsuitable for use in ballistic applications and posed a risk of death or serious injury;

2) failing to disclose that Toyobo had known since 1999 about the severe damage that occurred to Zylon during the weaving process which lowered its strength and performance;

3) failing to disclose test results revealing the degradation of Zylon when exposed to heat, moisture and light;

4) deleting data points from a November, 2001 degradation experiment regarding the effect of hydrolysis; and

5) downplaying and concealing the discovery of the "Red Thread Problem" (weak, discolored portions of the fiber caused by neutralization).

With respect to Toyobo's argument that First Choice has not pled facts to support its claim that the two defendants are "alter egos" of one another, the Court finds that those concerns have been allayed by the allegations in the proposed First Amended Complaint (which plaintiff will be given leave to file as noted below).

### iii. Duty to Disclose

To prove fraud by non-disclosure of a material fact, a plaintiff must show that the defendant had a duty to disclose such information. See Stolzoff v. Waste Sys. Int'l Inc., 792 N.E.2d 1031, 1044 (Mass. App. Ct. 2003). Toyobo claims that it

had no duty to disclose information concerning Zylon to First Choice because the parties did not have a "special" or fiduciary relationship.  That argument is unavailing.  Even absent a fiduciary relationship between the parties, Toyobo had a duty to disclose material information to First Choice because 1) it made partial disclosures to First Choice (thus triggering a duty of full disclosure) and 2) it had superior knowledge.

Under Massachusetts law:

> a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party.

V.S.H. Realty, Inc. v. Texaco Inc., 757 F.2d 411, 414 (1st Cir. 1985).  Although there is no general duty to speak, if a party chooses to speak, "he is bound to speak honestly."  Id.  Here, because Toyobo chose to speak about the safety and durability of their product, they had a duty to "divulge all the material facts bearing upon the point that l[ay] within [their] knowledge."  Id.

Toyobo's position of "superior knowledge" with respect to the plaintiff also triggered a duty to disclose information about Zylon.  See Eastman Kodak Co. v. Wachovia Bank Nat. Ass'n, 2007 WL 2406919, at *5 (W.D.N.Y. Aug. 21, 2007) (a party may be obligated to disclose relevant facts "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken

knowledge."). Here, because First Choice has sufficiently alleged that Toyobo was in a position of superior knowledge and disclosed incomplete information to First Choice, Toyobo's claim that it owed no duty to provide information about Zylon is without merit.

### b.    Unfair and Deceptive Trade Practices (Count III)

Defendants urge the Court to dismiss First Choice's Chapter 93A claim on the grounds that: 1) it is time-barred, 2) it does not satisfy Fed. R. Civ. P. 9(b) and 3) it contains no allegations that the alleged unfair practices occurred in Massachusetts.

### i.    Statute of Limitations

A Chapter 93A claim must be commenced within four years from the time that the cause of action accrues. M.G.L. c. 260, § 5A. The limitations period for 93A claims begins to run

> when an event or events have occurred that were
> reasonably likely to put the plaintiff on notice that
> someone may have caused [its] injury.

Laureau v. Page, 39 F.3d 384, 388 (1st Cir. 1994). First Choice (persuasively) argues that it was not injured by Toyobo's actions until after August 24, 2005, when it was forced to recall, refund and replace every Zylon vest it manufactured. Given that First Choice filed its complaint on August 18, 2009, the claim falls within the four-year limitations period.

-13-

### ii.   Pleading Standards for 93A claim

Next, Toyobo asserts that Plaintiff's Chapter 93A claim
fails because it is not pled with sufficient particularity.
That argument is deficient.  First Choice has more than
adequately pled specific actions taken by Toyobo to conceal the
known problems with Zylon.  In light of the detailed and
particularized allegations of fraud, Plaintiff's 93A claim
passes muster even under the heightened pleading standards of
Rule 9(b).

### iii. Whether Allegedly Deceptive Practices Occurred in Massachusetts

Third, Toyobo argues that First Choice does not state a
claim under Chapter 93A because it has not alleged that the
circumstances giving rise to the alleged harm occurred in
Massachusetts.  To state a claim under Chapter 93A,

> the actions and transactions constituting the ...
> unfair or deceptive act [must have] occurred primarily
> and substantially within the commonwealth.

M.G.L. c. 93A, § 11.  The First Circuit has taken a "functional
approach" to making that determination, adopting a three-part
balancing test which considers: 1) where the defendant commits
the unfair or deceptive act, 2) where the plaintiff receives or
acts on the wrongful conduct and 3) where the plaintiff sustains
losses caused by the wrongful conduct.
Play Time, Inc. v. LDDS Metromedia Communications, Inc., 123
F.3d 23, 33 (1st Cir. 1997).

Here, the complaint alleges that Toyobo engaged in trade and commerce in the Commonwealth of Massachusetts and, in furtherance of that business, made knowing and willful misrepresentations to First Choice regarding the quality and durability of Zylon.  It also alleges that 1) meetings between the parties occurred in Massachusetts, 2) Zylon was manufactured into vests in Massachusetts and 3) the plaintiff sustained losses in Massachusetts.  Thus, even though Toyobo's headquarters are elsewhere, First Choice has sufficiently alleged that it took significant actions and caused injury within the Commonwealth.

### c.   Economic Loss Doctrine

Finally, the defendants assert that all of the plaintiff's claims are barred by the so-called "Economic Loss Doctrine" because the plaintiff has failed to plead any personal injury or property damage.  That argument is entirely wanting.  Although the economic loss doctrine bars recovery for pure economic loss in negligence and strict liability cases, it does not apply in instances where the tort is intentional.  Canal Electric Co. v. Westinghouse Elec. Co., 973 F.2d 988, 998 (1st. Cir. 1992) ("the economic loss rule does not apply to harm caused by intentional misrepresentations"); In re Wellnx Mktg. & Sales Practices Litig., 673 F. Supp. 2d 43, 57 (D. Mass. 2009).  Because First Choice has asserted a claim of intentional misrepresentation,

-15-

the economic loss doctrine is inapplicable.

**B.     Plaintiff's Motion for Leave to File (Docket No. 38) & Defendants' Motion to Strike (Docket No. 39)**

On April 17, 2010, after receiving initial disclosures from the defendants, First Choice filed a First Amended Complaint ("FAC").  The FAC adds claims for breach of the express and implied warranties of merchantability and contains updated allegations concerning the original three claims.  Notably, First Choice did not formally request leave to file the FAC until several days after it had been filed.

Toyobo maintains that the putative claims for breach of warranty are futile because 1) they are time-barred and 2) there is no privity of contract between the parties.  It also insists that the three renewed claims are futile.  The Court rejects Toyobo's suggestion of futility with respect to both the new and the old claims.

The proposed breach of warranty claims are subject to a four-year statute of limitations.  See M.G.L. c. 106 § 2-275.  Under the discovery rule, a cause of action does not accrue until a plaintiff knows or reasonably should have known that it was injured by the defendant's conduct.  Coady v. Marvin Lumber & Cedar Co., 167 F. Supp. 2d 166, 172 (D. Mass. 2001).  Given that the NIJ continued to authorize and encourage the use of Zylon until August, 2005, plaintiff's contention that it could not have reasonably known of its defects before that date is

-16-

plausible.

The defendants' privity argument also falls short.
Although First Choice must be in privity of contract to recover
for breach of warranty, the proposed FAC describes several
written contracts between the parties.  Those contracts are
sufficient to establish, at least at this stage of the
proceedings, a plausible basis for a finding of privity between
the parties.  See Cruickshank v. Clean Seas Co., 346 B.R. 571,
579 (D. Mass. 2006).  Thus, the Court finds that the putative
claims for breach of warranty are not futile and will allow
Plaintiff's motion to amend its complaint to add such claims.

Toyobo has also moved to strike the amended complaint on
the grounds that it was filed in violation of Fed. R. Civ. P.
15(a).  Even if the plaintiff technically violated Rule 15(a) by
filing the FAC before requesting leave to do so, because this
Court will allow plaintiff's request for leave, striking the FAC
would be gratuitous.  Accordingly, the motion to strike will be
denied as moot.

## ORDER

In accordance with the foregoing,

1)   Defendants' motions to dismiss (Docket Nos. 8 & 22) are **DENIED;**

2)   Plaintiff's motion to amend (Docket No. 38) is **ALLOWED;** and

3)   Defendants' motion to strike (Docket No. 39) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 25, 2010